## The accounting in ELLEN FARRELL's Estate.

WHERE an executor *de son tort* afterwards takes letters testamentary, his responsibility relates back to the death of his testator, or to his own first act of unauthorized interference.

THE SURROGATE. The Revised Statutes provide (3 *R. S., 5th ed., p. 178*, § 57) that "any executor or adminis-

trator, after the expiration of eighteen months from the time of his appointment, may be required to render an account of his proceedings" to the Surrogate, on the application of a person in interest, or on the information possessed by and satisfactory to the Surrogate. And the practice is, in the Surrogate's office of New York county, for the Surrogate to call an executor or administrator to account, *proprio-motu*, where, as in this case, there are infants having no general guardians to protect their interests.

The testatrix, Ellen Farrell, died in March, 1866, leaving a will in which she nominated Charles H. Kurst as executor. Kurst took into his possession the real and personal property of the testatrix, from the moment of her death, but never propounded the will for probate till April, 1868. It went to probate in June, 1868, and letters testamentary then issued to him. Nearly three years have elapsed since the death of the testatrix and since the taking into possession of her assets by Kurst, but only eight months from the date of his letters. The infant legatees under the will are represented to the Surrogate to be in want and suffering. Can the executor be now ordered to account? What was the time of his "appointment?"

The intent of the law doubtless is, that executors, etc., shall have been eighteen clear months in control of the assets before accounting, but in this connection the following provision is also to be considered :

"Every person who shall take into his possession any of the assets of any testator, without being thereto duly authorized as executor, etc., shall be liable to account for the full value of such assets." (3 *R. S.*, *5th ed.*, *p.* 168, § 78.)

By Common Law, the executor was "appointed" by the will, and derived all his authority therefrom. By our statutes, it was intended that he should have the benefit of any delay that might intervene between death and

probate, unless he intermeddled unnecessarily and illegally with the estate.

The inference is, that the responsibility of the executor *de son tort* is not limited, as to time, by the issue to him of letters testamentary, but that it extends back to the date of his taking the assets into possession. In 2 *Hill, R., p.* 225, where a debtor paid the widow of an intestate the amount of his note, and she afterwards administered and sued on the note, the Court held that the letters related back, and legalized the payment. (And see *Ratton* v. *Overbacker*, 8 *John. R.*, 126; 1 *Williams on Exrs.*, 240, 396–7.) And the whole current of written statute and legal interpretation is, to hold persons who without authority take charge of the estates of the deceased, responsible for all acts done by them.

Accordingly, we find that our statutes are extremely severe against this class of intermeddlers. They declare (*same vol. R. S, p.* 156, § 15), that every person " named in the will as executor, and not named in the letters testamentary, shall be deemed to be superseded thereby, and shall have no power or authority whatever as such executor." Again (§ 16), that such a person, before letters be granted to him, shall have no "power to dispose of any part of the estate of the testator, except to pay funeral charges, nor to interfere with the estate in any manner further than is necessary for its preservation." Again (*p.* 226, § 2), that " every person who shall, in fraud of the rights of creditors and others, have received, taken, or in any manner interfered with the estate, property or effects of any deceased person, shall be liable in the proper action to the executors, administrators, etc., of such estate or property, for the same, or the value of any property or effects so received or taken, and for all damages caused by such acts."

It was not the intent of our statute, that an executor *de son tort*, who had never taken letters testamentary, should be called to account before a Surrogate. In such

event, he is a mere intruder, to be thrust out, and punished in a Court of Law. But if he had, after his tortious acts, recognized the Surrogate's authority, and voluntarily placed himself under the Surrogate's jurisdiction, by taking letters, it was intended that his responsibility should relate back to the very death of his testator, when he was "appointed" by the will, or to the first act of his unauthorized interference with the estate.

I must conclude that, eighteen months being expired since Charles H. Kurst took the assets of the testatrix into his possession, he is amenable to the process of this Court, and can be called to account. An order to account will be entered.